IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRED WINTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-11-441-JHP |
| | ) |
| BOARD OF COUNTY COMMISSIONERS | ) |
| OF MUSKOGEE COUNTY, OKLAHOMA, | ) |
| and CHARLES PEARSON, IN HIS OFFICIAL | ) |
| CAPACITY AS SHERIFF OF MUSKOGEE | ) |
| COUNTY, OKLAHOMA, | ) |
| | ) |
| Defendants. | ) |

**ORDER AND OPINION**

Now before the Court is the Defendants' Motion for Summary Judgment, filed April 25, 2014. Plaintiff filed a Response and Brief in Support on May 8, 2014. The Court notes that Plaintiff's Response did not include or identify any statement of facts in response to the Defendant's statement of undisputed facts, as required under LCvR 56.1. As such, and pursuant to LCvR 56.1, the Court deems admitted all material facts set forth in the statement of the material facts of the movant, and further finds as follows:

**I. Introduction**

Plaintiff asserts claims under the Fair Labor Standards Act, as well as a claim under Oklahoma law pursuant to <u>Burk v. K-Mart, Corp.</u>, 1989 OK 22, 770 P.2d 24 for wrongful discharge in retaliation for Plaintiff's engaging in protected activity under the FLSA and in violation of Oklahoma public policy. Plaintiff contends Muskogee County Sheriff Charles Pearson terminated his employment as the result of an overtime dispute.

Plaintiff, at the time of his termination, was a Deputy Sheriff for the Muskogee County Sheriff's Office, under Sheriff Charles Pearson. Sheriff Pearson is the final decision maker with

regard to the day-to-day operations of the Sheriff's Department, including decisions related to the hiring and firing of Sheriff's Department employees. There is no evidence of any oversight duties or responsibilities by the Board of County Commissioners, or any indication that the Board of County Commissioners, or any of its members, acted in any way to influence or participate in the decision to terminate the Plaintiff.

Plaintiff and Sheriff Pearson had known each other for an extended period of time, and both claimed to have been friends prior to the incident giving rise to Plaintiff's claims. Following his first election, the Sheriff encouraged the Plaintiff to apply, and then hired Plaintiff. After Plaintiff sought employment elsewhere, the Sheriff hired Plaintiff a second time. The Sheriff was familiar with Plaintiff's employment history during his time working for the Sheriff.

During his employment as a deputy, the Plaintiff was involved in a number of incidents the Sheriff alleges were motivating factors in the decision to terminate the Plaintiff. These incidents included an argument with a Chief Deputy in 2005, involvement in an improper shooting of a warning shot in pursuit of a fleeing suspect, and allowing a fleeing suspect to escape custody while handcuffed. The Sheriff, at the time of Plaintiff's termination, was also aware of Plaintiff's termination from Bacone College due to communication problems cited by Plaintiff's supervisor.

In January 2010, Plaintiff was supervised by Chief Deputy Terry Freeman and Undersheriff Randy Perryman, as well as Sheriff Pearson. Sheriff Pearson attributes Chief Deputy Freeman with saving his life in 1997, when Freeman had to shoot a suspect that placed Sheriff Pearson in imminent danger.

Shortly before Plaintiff's termination, the Sheriff's Office was allotted funds to purchase new vehicles for its Deputies. The purchased vehicles were driven to Tulsa, Oklahoma for installation

2

of custom equipment and uniform installation for each Deputy assigned a unit. Due to budget constraints, the Sheriff's Office sent on-duty employees to Tulsa to obtain these additions. However, because some deputies wanted to be the first to drive their new vehicles, the Sheriff's Office allowed them to volunteer to take their cars for this maintenance on their day off.

On or about January 5, 2010, Deputy Brian Caster asked Plaintiff if he wanted to drive his new car to Tulsa the next day, on his day off, to which Plaintiff agreed. Plaintiff admits he was not ordered to do so. Upon his return, Plaintiff turned in his comp time request for two and a half hours for the trip to Tulsa. Chief Deputy Freeman received the time sheet and reviewed it for accuracy, noting that Plaintiff had turned in his time for the Tulsa trip. Since Plaintiff volunteered for the trip and was requesting comp time, when an on-duty employee would have been able to drive the vehicle at no additional expense to the county, Freeman notified Sheriff Pearson. Pearson testified he wanted to speak with Plaintiff about his performance anyway, and told Freeman to write "denied" on the time sheet in order to prompt a discussion with Plaintiff. The Plaintiff did, however, receive credit and/or payment for his comp time request.

On January 15, 2010, Plaintiff received the time sheet marked "denied." Plaintiff approached Chief Deputy Freeman, in his office, and demanded to know whether "it was the final decision." Freeman notified Plaintiff that no other employees that drove to Tulsa had been off duty volunteers. Plaintiff became angry and told Chief Deputy Freeman, "Well, I could go to the labor board[1]." Thereafter, Chief Deputy Freeman told Plaintiff to wait, and then retrieved the Undersheriff and the Sheriff. When all three returned, the Chief Deputy told Plaintiff he was not going to come into his

---

[1] There is no indication from the testimony or documents of record as to what entity Mr. Winters was referring to, and Mr. Winters' own testimony is that he referred only to "the labor board."

office trying to intimidate him, raising his voice, shaking things at him and demanding him to do something. Plaintiff and Chief Deputy Freeman continued to briefly argue in the presence of the Undersheriff and Sheriff. Sheriff Pearson then told Plaintiff he would not permit Plaintiff to speak to Freeman in that manner, and referenced the time Freeman saved his life. Sheriff Pearson then told Plaintiff his services were no longer needed.

Neither the Sheriff, Undersheriff, nor Chief Deputy testified that Plaintiff mentioned "the labor board" in the presence of the Sheriff. Plaintiff testified alternatively that he did not mention any threat to go "to the labor board" after Sheriff Pearson came into the room and later testified that he mentioned the "labor board" at some point while Sheriff Pearson was in the room. Sheriff Pearson testified that he terminated the Plaintiff for his insubordinate and disrespectful actions toward his supervisors.

## II. Discussion

Defendants have moved for summary judgment as to all claims. Under Rule 56(a) of the Federal Rules of Civil Procedure "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **While all matters are considered in the light most favorable to the non-movant, the Defendant's Statement of Undisputed Facts in this action have not been challenged by the Plaintiff, and they are therefore deemed admitted. LCvR 56.1.**

### A. Plaintiff's FLSA Claims

Plaintiff presents claims for discrimination and retaliation under the Fair Labor Standards Act, specifically 29 U.S.C. §215(a)(3), which prohibits an employer from discharging or discriminating against an employee because the employee filed a complaint or instituted proceedings

4

under the FLSA. Plaintiff has presented claims against both the Board of County Commissioners and the Sheriff of Muskogee County, in his official capacity, and these claims are addressed separately as follows.

### 1. The Board of County Commissioners is Not Plaintiff's Employer

Under the applicable provision of the FLSA, 29 U.S.C. §215(a)(3), it shall be unlawful:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding.

29 U.S.C. §215(a)(3). There is no evidence that the Plaintiff is an employee of the Board of County Commissioners. The definition of employee is found in 29 U.S.C. §203(e). Under this definition, an employee is generally an individual that is employed by the employer, or any person acting directly in the interest of an employer in relation to that employee. 29 U.S.C. §203(d). However, §203(e)(2)(c) sets forth that an individual employed by a State, political subdivision of a State, or an interstate governmental agency, is an employee for purposes of the FLSA.

Under Oklahoma law, a county is identified as a political subdivision. 51 O.S. §151. Further, a Board of County Commissioners is organized to exercise the "body politic and corporate" functions of the political subdivision, and it is separate and distinct from the political subdivision itself, which is the county as a whole. The Sheriff is an elected official of the county, and he has authority to hire and fire his own employees. Similarly, the Board of County Commissioners may hire and fire its own employees. Moreover, the definition for an employer under the Fair Labor Standards Act specifically identifies a person acting in the interest of an employer in relation to an employee. There is no evidence or suggestion in the record that the Board of County Commissioners played any role in the supervision of the Plaintiff, or that it played any role in any

employment decision, including Plaintiff's termination. Since the Board of County Commissioners is not the Plaintiff's employer, and since it did not act in the interest of an employer in relation to the Plaintiff, Plaintiff's claims properly lie only against the Sheriff, and not the Board of County Commissioners. As such, Plaintiff's FLSA claims against the Board of County Commissioners are dismissed.

### 2. Plaintiff Did Not Engage in Protected Activity Under the FLSA

Plaintiff brings discrimination and retaliation claims under the Fair Labor Standards Act against Sheriff Pearson. In order to establish an FLSA retaliation claim under 29 U.S.C. §215(a)(3), a plaintiff must demonstrate that he was terminated in retaliation for engaging in activity protected under the Act. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997). Plaintiff contends that Sheriff Pearson terminated his employment as a result of a complaint regarding what the Plaintiff believed to be the denial of overtime or compensatory time credit for his trip to Tulsa, Oklahoma, on his day off work. Plaintiff has not shown, under the facts as deemed admitted, that he engaged in any protected activity, or that his termination was in retaliation for complaining about the purported denial of overtime.

Under the FLSA, Plaintiff must demonstrate that he was discharged because he "filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or has testified or is about to testify in any such proceeding." 29 U.S.C. §215(a)(3). Plaintiff never contacted the Department of Labor of the United States or the State of Oklahoma. There is no evidence to support any assertion that he testified or was about to testify in any such proceeding. Plaintiff offered a single stray comment in the presence of Chief Deputy Freeman, suggesting that if his overtime was not paid or compensated, he "could go to the labor board." It is important to note that at the time

6

this comment was made, the Sheriff had approved payment and compensation for overtime, the credit for overtime had already been turned in, and the Plaintiff was ultimately credited for his overtime work. As such, at the time the comment was made, there was no risk or threat associated with his comment, nor could any have been perceived by Chief Deputy Freeman or Sheriff Pearson. This fact undermines any argument that the reason for Plaintiff's termination was retaliatory, due to, or motivated by, a possible inquiry into something that was neither in violation of the law nor likely to cause any substantial hardship for the Sheriff. Plaintiff's idle and stray comment does not rise to the level of a complaint or proceeding under the FLSA, and therefore Plaintiff's activity is not protected.

### B. Plaintiff's *Burk* Tort Claim

Plaintiff also presents a claim against the Board of County Commissioners of Muskogee County for wrongful termination in violation of Oklahoma Public Policy[2]. Under Oklahoma common law, employees are at-will, subject to termination at any time, with certain exceptions under federal and state law. The Oklahoma Supreme Court recognizes a cause of action for wrongful discharge in violation of public policy, creating an exception to this rule. *Wilburn v. Mid-South Health Dev't, Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003)(citing *Burk v. K-Mart*, 770 P.2d 24 (Okla. 1989). This cause of action is to be "tightly circumscribed" and is available only where "an employee is discharged for refusing to act in violation of an established and well-defined public

---

[2] Under the Oklahoma Governmental Tort Claims Act, only the state or a political subdivision may be liable for loss resulting from torts or torts of its employees. See 51 O.S. §153 and 51 O.S. §152(7)(a)(1). As such, this claim may be properly presented only against the political subdivision, the county. 51 O.S. §152(11). State law requires state law claims such as this to be presented against the Board of County Commissioners of the County of Muskogee. 19 O.S. §4. Therefore, no *Burk* tort claim against the Sheriff in his Official Capacity is recognized herein, and only this claim against the Board of County Commissioners is addressed.

7

policy or for performing an act consistent with a clear and compelling public policy." *Id*.

Plaintiff has not set forth any valid public policy to support his *Burk* claim. Moreover, to the extent Plaintiff has an available remedy for any such cognizable retaliation for complaints associated with failure to receive credit or overtime under the Fair Labor Standards Act, there is an adequate remedy in that law to protect his interests, and therefore no *Burk* tort claim is available.

Plaintiff alleges he was terminated in retaliation for threatening to contact "the labor board" regarding his overtime dispute with the Sheriff's Office. Plaintiff asserts the Oklahoma Protection of Labor Act ("PLA") sets forth a public policy violated by his termination. However, the courts which have considered this issue have repeatedly ruled that the PLA does not provide an established and well-defined public policy sufficient to support a *Burk* claim related to overtime disputes.

In *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 (10th Cir. 1996), the Tenth Circuit, applying Oklahoma law, affirmed the district court's ruling dismissing the plaintiff's *Burk* tort for failure to state a claim. The plaintiff alleged she was terminated for reporting her concerns that the defendant was not properly paying overtime. *Id.* at 1487. The Tenth Circuit noted the plaintiff could only prevail on her claim if she could "show that Oklahoma has a clearly established public policy regarding maximum work hours and overtime pay." *Id.*

Ultimately, the court ruled that in fact, Oklahoma did not have any such policy and therefore, the plaintiff's *Burk* tort could not stand.

> McKenzie has not pointed us to any specific Oklahoma statute establishing a public policy of this sort. Moreover, we find no Oklahoma constitutional, statutory or decisional law which would require an employer such as Renberg's, Inc. to pay overtime compensation to its employees. The absence of any Oklahoma law on this subject is underscored by the fact that although the Oklahoma legislature has adopted the federal standards for minimum wages, *see* Okla. Stat. tit. 40 § 197.2 (making it unlawful for an employer in Oklahoma to "pay any employee a wage of less than the

current federal minimum wage for all hours worked"), it has not adopted the FLSA standards governing maximum hours and overtime, *see* 29 U.S.C. § 207.

*Id.* This reasoning applies directly to the present case.

The plaintiff in *McKenzie* attempted to rely on the PLA as his public policy, as does the Plaintiff here. The court, in that case, specifically rejected this argument and ruled the PLA is not sufficient to support a *Burk* claim of this nature, stating:

> we believe section 165.1(4)'s passing reference to 'overtime pay' is far too slender a reed upon which to base a public policy tort. Although it mentions overtime pay, section 165.1(4) does not prescribe a limit for maximum working hours, nor does it set forth a specific formula for calculating overtime pay. The absence of any clearly articulated overtime pay policy in the Oklahoma statutory scheme suggests that the Oklahoma courts would not entertain a *Burk* claim founded upon a discharge for reporting an employer's failure to pay overtime.

*Id.* at 1488.

The Oklahoma Supreme Court then cited *McKenzie* with approval in *Darrow v. Integris Health, Inc.*, 176 P.3d 1204 (Okla. 2008) wherein the court discussed the fact that a federal law cannot provide a viable public policy to support a *Burk* claim. *Id.* at 1211. Specifically, the court noted that *McKenzie* had ruled that there was an absence of any clearly articulated overtime compensation policy in the Oklahoma statutory scheme sufficient to support a *Burk* cause of action and that the most the plaintiff could do was allege a violation of the Federal Fair Labor Standards Act ("FLSA"), which could not create a cognizable public policy for a *Burk* claim. *Darrow*, 1211, n. 32 (citing *McKenzie*, 94 F.3d at 1487-88).

On another occasion, in *Reynolds v. Advance Alarms, Inc.*, 232 P.3d 907 (Okla. 2009), the court answered a question certified by the United States District Court of the Northern District of Oklahoma referenced various provisions of the PLA and "effectively asks whether these statutes 1) require an employer to pay an employee for work performed during lunch time and 2) impose

9

liability upon the employer for discharging an employee who contacts the Oklahoma Department of Labor about the employer's lunch break policy." *Id.* at 909-910. The court found that the PLA did not support the plaintiff's *Burk* tort claim. Consistent with the analysis in *McKenzie*, the court noted that the PLA does not contain any provisions articulating a policy as to "work time" or "lunch breaks," and thus could not set forth a clearly defined public policy related to whether employees were entitled to pay for work performed during their lunch breaks. *Id.* at 910-911. The court held the PLA "does not purport to guide the employer in calculating hours worked or wages earned." *Id.*

In the instant case, Plaintiff alleges he was terminated because he threatened he could "go to the labor board" in regard to what he erroneously believed was the Sheriff's failure to properly pay or credit him with overtime. He relies upon the PLA as the public policy to support his *Burk* claim. However, the PLA does not set forth any policy related to overtime compensation. As noted in *McKenzie*, Oklahoma law does not contain any statutory authority regarding the calculation of overtime or maximum working hours. The only law governing the calculation of overtime is found in the FLSA and, in fact, it sets forth unique overtime calculations for employers in the law enforcement field, such as the Sheriff's Office. *See* 29 U.S.C. §§ 207(k), 207(o); 29 C.F.R. §§ 553.201, 553.223, 553.224(a), 553.230. Though Oklahoma has adopted the federal standards for minimum wages, it has not adopted any standards, guidelines or regulations with regard to overtime compensation. *McKenzie*, 94 F.3d at 1487 (citing Okla. Stat. tit. 40, § 197.2). The only law governing the calculation of an employee's overtime is found in federal law, and is not addressed by Oklahoma law. As the court noted in *McKenzie*, Oklahoma does not have a compelling, well-articulated public policy regarding overtime where it has not passed or adopted any law pertaining to the same. *Id.* at 1487. Courts have not found any such policy.

As in the *Reynolds* opinion, the PLA can not provide a public policy for the plaintiff's *Burk* claim where it does not address work performed during lunch hours, nor does it address what constitutes "work time," the central issue with regard to the plaintiff's retaliatory discharge claim. *Reynolds*, 232 P.3d at 910-913. Likewise, neither the PLA, nor any other Oklahoma authority, addresses the calculation of overtime and/or maximum hour requirements. As the courts in *McKenzie, Darrow* and *Reynolds* recognized, the PLA seeks to protect whistleblowers by way of §199, but it cannot articulate a policy regarding the protection of reporting overtime complaints if it does not contain any overtime policy or requirements. The *McKenzie* opinion specifically rejected claims such as Plaintiff's, and the Oklahoma Supreme Court cited the holding with approval. See *Darrow*, at 1211 n.32. Therefore, the Plaintiff cannot set forth a sufficient public policy to support his *Burk* claim.

Further, where an adequate available remedy exists, there is no *Burk* tort claim available. See *Conner v. Schnuck Mkts.*, 121 F.3d 1390, 1399 (10th Cir. 1997)(upholding summary judgment dismissing retaliatory discharge under Kansas law where statutory remedy in Fair Labor Standards Act was found adequate).

### C. The Evidence Does Not Support any Retaliation Claim

Even if Plaintiff's claims did not fail for the above reasons, the facts accepted as true do not sustain a claim for retaliation under any of Plaintiff's asserted theories of recovery. In order to establish an FLSA retaliation claim under 29 U.S.C. § 15(a)(3), a plaintiff must demonstrate that they were terminated in retaliation for engaging in activity protected under the Act. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997). Likewise, in order to establish a *Burk* tort claim, a plaintiff must show his termination was contrary to a clearly articulated, well-established

public policy. *Burk*, 770 p.2d at 29. In this regard, Plaintiff contends Sheriff Pearson terminated his employment as a result of his complaint regarding a denial of overtime. However, Plaintiff cannot meet his burden and has not included, or identified any statement of facts in response to the Defendant's statement of undisputed facts, as required under LCvR 56.1. As such, and pursuant to LCvR 56.1, the Court deems admitted all material facts set forth in the statement of the material facts of the movant.

Defendant contends Plaintiff was terminated due to a long history of employment problems including the careless use of a firearm, letting a suspect get away while wearing handcuffs, a sense of entitlement, difficulty in getting along with other employees and supervisors and a generally poor attitude. Sheriff Pearson's intolerance of such behavior on the part of his deputies, and his record of disciplining and terminating them for such behavior, was well-established at the time of Plaintiff's termination. Further, the undisputed record also reflects Sheriff Pearson attributed Plaintiff's termination, in part, due to his disrespectful and insubordinate treatment of Deputy Freeman. Sheriff Pearson held Chief Deputy Freeman in high esteem due to an incident in which Deputy Freeman had saved Sheriff Pearson's life. Accordingly, Plaintiff cannot meet his burden to establish the causation element of his retaliation claims.

### III. Conclusion

Therefore, for the reasons set forth above, the Court grants the Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED THIS 24th DAY OF JUNE, 2014.**

James H. Payne
United States District Judge
Eastern District of Oklahoma